SAMUEL JOHNSON *vs.* JAMES H. MILLS & others.

If a collector of taxes, who has given bond to the town treasurer, instead of to the town, carries money collected by him for taxes, to the treasurer, and would pay it to him, if payment were required, and the treasurer thereupon agrees with him, without the consent or knowledge of his sureties on the bond, that he may keep the money for a time, and pay his own debts with it, and he does so, the sureties are thereby discharged from their liability for the money so retained.

THIS was an action of debt on a bond given to the plaintiff, as treasurer of the town of Andover, by the defendant Mills, a collector of taxes in that town, as principal, and the other defendants, as his sureties, conditioned that Mills should "faithfully collect, account for, and pay over all taxes which

he shall be legally required to collect, and also with diligence and fidelity discharge the duties of the aforesaid office." Mills was defaulted. The other defendants pleaded the general issue and specified, in defence, that after the money became due and payable by Mills, according to the tenor of the bond, he went, with the money, to the plaintiff to pay the same, but that the plaintiff neglected to receive the money, and agreed that Mills should not pay it then, but should have a further time; and that the plaintiff concealed said indulgence from the sureties.

At the trial, which was in the court of common pleas, before *Perkins*, J. the plaintiff produced and read the bond; and it was agreed that Mills had collected some taxes, and that the sum of $504.83 was not paid over when this suit was commenced; and that, if the sureties were liable at all, it was for that sum and such interest thereon as by law they were liable for.

The sureties gave in evidence the deposition of Mills, the principal obligor, who deposed as follows: " Some time in July, 1849, I went to the plaintiff with regard to the money I was owing the town. I told him I had come to see him about that, and to see if he would not let me off on it, and put it along. He said the town wanted the money, and was paying interest for money, and that he had no right to lend the town's money. I told him I wanted to use all the money I had, and if he would let me off, I would pay him what interest the town had to pay while I wanted it for a month or two. I told him I could pay the money, but that I had a good many notes and bills to pay that month, and that if he would let me off a couple of months or so, I would pay him whenever he wanted it or said it must be paid. He said I had always been pretty prompt in paying up my tax lists before that, and that he wanted to be as accommodating as he could. I told him, if he would let me know when it must be paid, I would certainly pay it, if he would let me off for that time. I asked him not to let my bondsmen know any thing about it, but let me know first, and not say any thing to them; and I understood him to say that he would not say any thing

to my bondsmen before he let me know. He said if I would pay any time within a month or two, he would let me off; as he did not want to be hard with me. That is the conversation, as near as I can remember it. As near as I can remember, I had with me at the time about eleven hundred dollars. When I went to see the plaintiff, I went with the expectation of paying what was due on my tax lists if I could not postpone it. I did not tell the plaintiff how much money I had, and he never refused any money offered to him, in sums however small, at any other time."

The judge ruled that the facts stated in the deposition did not constitute a good defence to the sureties. A verdict was thereupon taken for the plaintiff, by consent, for $532.61 ; and the sureties alleged exceptions to the judge's ruling.

*J. W. Perry*, for the sureties.

*S. C. Bancroft*, for the plaintiff.

METCALF, J. A new trial must be ordered, in consequence of the instructions that were given to the jury. They should have been instructed, we think, as follows : If Mills carried the money to the plaintiff, and would have paid it to him, on his requiring payment, but the plaintiff thereupon made an agreement with him, without the consent or knowledge of his sureties, that he might keep back the money for a time, and pay his own debts with it, and if he did so, then the sureties had a good defence. And we are of opinion that the jury would have been warranted in finding all these facts on Mills's testimony. At least, it was for them to decide what inferences of fact might or might not be properly deduced from that testimony.

The argument for the plaintiff is, that he did not give time to Mills by an obligatory agreement which deprived him of the power of immediately suing on the bond ; *Orme* v. *Young*, Holt N. P. 84 ; nor by an agreement for the breach of which Mills would have had a remedy either in law or equity ; *Greely* v. *Dow*, 2 Met. 176 ; and therefore the sureties are not discharged. Pitman on Prin. & Surety, 167 *& seq.* But we think this doctrine is not applicable to the present case. No time for the payment of the collected taxes was mentioned in

the condition of the bond; so that the agreement of the plain-
tiff with Mills was not, in strictness, an agreement to extend
the time of payment. It was, in effect, a lending of money to
Mills, to be used for his own purposes, for the payment of
which the sureties on the bond did not undertake. Whether
such an agreement between the treasurer and collector·would
have exonerated the sureties, if the bond had been given to
the town, as it ought to have been, instead of the treasurer, it
is not necessary to inquire.

*New trial in this court.*